### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CLIFTON LEVON PORCHER, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-4160 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, seeks habeas relief under 28 U.S.C. § 2254 challenging his conviction and life sentence for capital murder. Respondent filed a motion for summary judgment (Docket Entry No. 11), to which a response was filed (Docket Entry No. 12).[1]

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

The jury found petitioner guilty of capital murder in Harris County, Texas, and the trial court sentenced him to life imprisonment. The conviction was affirmed on appeal. *Porcher v. State*, No. 14-05-00867-CR (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd).

---

[1] The typewritten response and certificate of service are unsigned and fail to comply with Rule 11(a) of the Federal Rules of Civil Procedure. Nevertheless, in the interest of justice, and because the response provides petitioner no basis for relief, the Court has reviewed the response.

The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's application for state habeas relief.  *Ex parte Porcher*, Application No. 71,274-02.

Petitioner raises the following grounds for habeas relief in the instant petition:

1.      Trial counsel was ineffective in

      a.      failing to impeach Sergeant Douglas and Constable Evans;

      b.      failing to interview any witnesses prior to trial;

      c.      failing to show that petitioner was not "clean shaven" just for trial;

      d.      failing to contact a witness's probation officer;

      e.      failing to object to a juror during trial; and

      f.      failing to object to evidence of petitioner's gang affiliation.

2.      Appellate counsel was ineffective in failing to challenge the sufficiency of the evidence.

3.      The State committed prosecutorial misconduct in

      a.      soliciting perjured testimony; and

      b.      withholding evidence of pretrial witness preparation.

Respondent argues that these grounds should be summarily dismissed for lack of merit and/or as procedurally barred from consideration by the Court.

### *Factual Background*

The state court of appeals set forth the following statement of facts in its opinion on direct appeal:

2

In October of 2002, Tyrone Jones approached his roommate, Romalius Mathews, with a request to purchase a kilogram of cocaine.  Mathews had the ability to purchase this cocaine from his longtime friend and associate, the complainant, Andre Merriweather, with whom Mathews had engaged in other narcotics transactions.  Jones provided Mathews with $17,000 to purchase the cocaine.  On October 16, 2002, immediately after receiving the cash, Mathews contacted Merriweather to arrange for the 'exchange' to occur later that evening at a McDonalds restaurant.

In the meantime, Mathews came up with a plan to steal the purchase money back from Merriweather after the two had completed the cocaine transaction.  Mathews discussed this plan with Jones, and they contacted Lee Washington, who was the leader of a gang known as 'the Fam' or 'the Family.'  [FN. Appellant and Mathews were members of the Family.  The members paid monthly dues to the group leader (Washington).]  The plan, as developed by Mathews, was for Mathews to meet Merriweather alone and pay him $16,200.00 in exchange for one kilogram of cocaine.  Mathews suspected that Merriweather would drive to a night club after the transaction and leave the money in his car.  According to Mathews's plan, someone else would follow Merriweather to the club and then break into Merriweather's car through the window and steal the money.  Washington called appellant, who agreed to be the accomplice in Mathews's plan.

Washington and appellant met Mathews at a grocery store near the McDonalds where Mathews and Merriweather were to conduct the cocaine transaction later that evening.  All three men sat in appellant's truck while Mathews explained his plan to appellant.  Mathews, surprised at seeing appellant loading a Glock gun, told appellant that a gun was not necessary because Merriweather did not carry a gun.  Appellant replied, 'you never know what might happen.'  Mathews then left the grocery store and drove to the McDonalds in his car while Washington and appellant drove to a Race Track gas station located next to the McDonalds.

Soon thereafter, Merriweather arrived in a silver Mercedes sports utility vehicle ('SUV') and parked next to Mathews.  Mathews retrieved the box of money out of his own car and got into Merriweather's SUV to make the exchange.  While they were completing the transaction, a man approached the driver's side of Merriweather's vehicle and hit the window with the back of his weapon.  Mathews, who was sitting in the passenger seat, immediately looked up and saw appellant.  Merriweather, who was sitting in the driver's seat,

3

jumped into Mathews's lap, just as appellant lifted his weapon and fired through the driver's side window.  Mathews, in the passenger seat, felt glass and blood-splatter hit him.  Then, after hearing another gun shot, Mathews heard Merriweather say, 'ouch.'

At the time of the shooting, Merriweather's vehicle was not in the 'park' position.  Consequently, after he was shot, his foot fell off the break [sic], and the SUV, still in gear, spun backwards in a circular motion.  The passenger side door flew open, and Mathews was thrown from the vehicle, and landed in the grass near the parking lot.  From there Matthews could see the SUV collide with other vehicles in the parking lot.  When the vehicle finally came to a stop, appellant ran to the SUV, dove through the window, and fired more shots (at least two or three) into Merriweather.   Appellant was thrown backward when the SUV moved forward.  Appellant then went back to the SUV, looked in the driver's side window, and fled the scene.  Mathews went to the SUV to check on Merriweather, and found him still alive.  He pulled Merriweather from the SUV and held Merriweather's head on his lap.  Merriweather died within minutes.

Meanwhile, Dierdra Castilow, a customer in the McDonalds drive-through lane, had witnessed the event.  After the shooting, she saw a man walk up to the SUV and reach in and retrieve something.  She described him as being clad in dark clothes, with a hood on his head, and his hands in his pockets.  She also saw a white Avalanche vehicle parked at the McDonalds, and when the hooded man approached the vehicle, it took off.  The hooded man then fled into a wooded area.

Castilow left the McDonalds and drove to the Race Track gas station.  On the way, she saw what she thought was the white Avalanche parked by some trailers, and someone walking out of the bushes toward this vehicle.  She then returned to the McDonalds and considered administering cardiac pulmonary resuscitation to Merriweather, but decided against it when she saw smoke coming from the bullet wounds in his chest.  Although Castilow could not identify the man who took the items from the SUV, she testified that he was a black man with a slim build.  Her passenger and companion that evening, Taiwanna Richardson, described the man as wearing a hood over his head, wearing baggy blue jeans, being approximately six feet tall, and weighing about 160 pounds.

4

On the night of the shooting, Mathews gave a statement to the police.  By his own admission, Mathews omitted material information from this initial statement and was not completely truthful with the police.  Initially, Mathews disclosed only that he was sitting in Merriweather's vehicle when someone approached and shot his friend.  Mathews later testified that, at the time, he did not want to admit to the police that he and Merriweather had been involved in a narcotics transaction because he feared his federal probation might be revoked if the truth of his activities were revealed.  Mathews also testified that he did not identify appellant as the shooter because he feared appellant would kill him if he did.  In fact, Washington spoke to Mathews several days later, and did threaten to kill him if he talked about the shooting.

About a week after the shooting, Mathews provided a second statement to the police in which he admitted to purchasing cocaine from Merriweather at the time of the shooting.  However, Mathews still refused to reveal the gunman's identity because he remained intimidated by members of the Family.  As a result of his involvement in the narcotics transaction, Mathews's probation was revoked and he was placed in federal custody in April 2003.

Several months later, in October 2003, Agents Vanessa Walthur and Tony Davis of the Federal Bureau of Investigation ('FBI') interviewed Mathews about a matter unrelated to the Merriweather homicide.  However, at the completion of this interview, Mathews indicated that he wanted to discuss the Merriweather homicide.  Because Merriweather had been a witness in a federal trial, these two FBI agents previously had interviewed Mathews about Merriweather's murder.  After conducting their own independent investigation, the agents determined that Merriweather's murder was not related to the federal case.  Mathews felt that because he was in federal custody, he could safely reveal the identity of the gunman who had fatally shot Merriweather and he informed the agents that appellant had shot and killed Merriweather.

The FBI agents contacted Sergeant Clarence Douglas, with the Houston Police Department, who was the homicide investigator in charge of the Merriweather murder, and informed him that Mathews wanted to speak to him in regard to the shooter's identity.  Sergeant Douglas then met with Mathews, who told him that appellant shot Merriweather and Washington drove the get-away vehicle.

After his meeting with Mathews, Sergeant Douglas obtained a photograph of appellant and placed it in a photospread to be viewed by Jimmie Evans, a police officer employed by Precinct One.  Evans happened to be pumping gas

at the Race Track gas station on the night of the Merriweather murder and witnessed the shooting.  After hearing the first shot, Evans had looked in the direction of the McDonalds and caught a glimpse of the gunman's face.  Evans testified that although the shooter was wearing a hood, there was nothing covering his face and from Evans' position about thirty yards away, he could see the shooter's face.  After viewing the photospread, Evans positively identified appellant as the gunman, saying he was one hundred percent certain of his identification.

Appellant was arrested and charged with the offense of capital murder.  He pleaded 'not guilty.'  The jury found appellant guilty of the charged offense, and the trial court imposed an automatic life sentence.

*Porcher*, at *1–4.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

6

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceedings.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Id*. at 330–31; 28 U.S.C. § 2254(e)(1).

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the summary judgment evidence, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden

shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). While summary judgment rules apply with equal force in a section 2254 proceeding, the rule only applies to the extent that it does not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual

prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

9

Petitioner asserts that trial counsel was ineffective in the following instances, each of which will be separately addressed.

A.      Failure to impeach Sergeant Douglas and Constable Evans

Petitioner claims that trial counsel failed to impeach the State's witnesses, Sergeant Douglas, regarding Constable Evans's description of the shooter, and Constable Evans, as to when he thought he saw the shooter's face.  Specifically, petitioner argues that Constable Evans was too far away and under insufficient lighting to have seen petitioner's face clearly.

In rejecting these argument on collateral review, the trial court made the following relevant findings:

1.      Regarding Applicant's claims that counsel failed to impeach Sgt. Douglas and Constable Evans, Applicant admits in his own memorandum attached to his application for writ of habeas corpus that counsel did in fact impeach both of these witnesses; therefore Applicant's claims in this regard are without a basis in fact.

2.      Applicant fails to allege and prove sufficient facts which if true would entitle him to habeas relief in regards to his claims that counsel was deficient in failing to impeach Sgt. Douglas.

3.      Applicant fails to allege and prove sufficient facts which if true would entitle him to habeas relief in regards to his claims that counsel was deficient for failing to impeach Constable Evans.

                                    *     *     *     *

12.     Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

10

> 13.    The totality of the representation afforded Applicant at trial was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Porcher*, pp. 146–147 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner establishes no factual basis for these claims, inasmuch as he acknowledges throughout his voluminous memorandum of law that trial counsel cross-examined and impeached these two witnesses regarding their viewing and description of the perpetrator. Moreover, a review of the trial record shows that counsel thoroughly cross-examined these witnesses and exposed contradictions and inconsistencies in their testimony.  R.R., Vol. 4, pp. 31–57; 111–126.  Petitioner identifies no specific cross-examination that trial counsel omitted regarding these witnesses, nor does he show that, but for such omitted cross-examination, there is a reasonable probability that the result of the trial would have been different.  Petitioner's generalized allegations of deficient cross-examination are conclusory, unsupported in the record, and insufficient to meet his burden of proof under AEDPA.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (holding that, absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value).

The state courts denied relief on these claims.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*

or was an unreasonable determination of the facts based on the evidence in the record.

Respondent is entitled to summary judgment under these claims.

      B.    <u>Failure to interview witnesses prior to trial</u>

      In likewise conclusory fashion, petitioner claims that trial counsel failed to "interview

all the witnesses" prior to trial.  In rejecting this claim on collateral review, the trial court

made the following relevant findings:

> 4.    Regarding his claim that counsel was deficient for failing to interview witnesses prior to trial, Applicant fails to meet his burden of showing which witnesses trial counsel should have sought out and interviewed, that these witnesses were available, and that their testimony would have benefited Applicant's defense.

>               \*   \*   \*   \*

> 12.    Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

> 13.    The totality of the representation afforded Applicant at trial was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Porcher*, pp. 146–147 (citations omitted).  The Texas Court of Criminal Appeals

relied on these findings in denying habeas relief.

      Petitioner's allegations of failure to call or interview witnesses are conclusory and

unsupported in the record.  Petitioner presents no probative summary judgment evidence

regarding the proposed testimony and availability of any witness or that the testimony would

have been material and beneficial to the defense.  *See Day v. Quarterman*, 566 F.3d 527, 538

12

(5th Cir. 2009) ("To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Nor does petitioner merit relief under his argument that trial counsel failed to interview the State's witnesses, as the State's witnesses are under no legal obligation to communicate with defense counsel. *See United States v. Benson*, 495 F.2d 475, 479 (5th Cir. 1974); *see also United States v. Soape*, 169 F.3d 257, 270 n. 9 (5th Cir. 1999). Petitioner does not show that the State's witnesses were amenable to being interviewed by defense counsel or that, but for counsel's failure to interview the witnesses, there is a reasonable probability that the results of the trial would have been different. Petitioner's generalized allegations of deficient performance are conclusory, unsupported in the record, and insufficient to meet his burden of proof under AEDPA. *See Ross*, 694 F.2d at 1011.

The state courts denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment under this claim.

C.     Failure to show that petitioner was not "clean shaven" for trial

Petitioner claims that trial counsel should have presented witnesses to testify that petitioner was not "clean shaven" for trial, and that he had been bald since 1995.

13

In rejecting this claim on collateral review, the trial court entered the following relevant findings:

> 5.   Regarding his claim that counsel was deficient for failing to call a witness to prove that Applicant was bald, Applicant fails to meet his burden of showing which witnesses trial counsel should have sought out and interviewed, that these witnesses were available, and that their testimony would have benefited Applicant's defense.
>
> *   *   *   *
>
> 12.   Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.
>
> 13.   The totality of the representation afforded Applicant at trial was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Porcher*, pp. 146–147 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner presents no probative evidence of any witness that should have been called by trial counsel in this regard, and fails to establish deficient performance under *Strickland*. *See Day*, 566 F.3d at 538.  Further, petitioner does not establish that, but for counsel's failure to call such witness, there is a reasonable probability that the result of the trial would have been different.  Petitioner's generalized allegations of deficient performance are conclusory, unsupported in the record, and insufficient to meet his burden of proof under AEDPA.  *See Ross*, 694 F.2d at 1011.

14

The state courts denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment under this claim.

D.     Failure to contact a witness's probation officer

Petitioner next argues that trial counsel should have called Mathews's probation officer as a defense witness to testify that Mathews's probation was revoked for an unrelated drug case, not for the instance case.  According to petitioner, this would have proved that a "deal" was made between the State and Mathews that was kept from the defense and the jury. (Docket Entry No. 1, p. 8.)

In rejecting this claim on collateral review, the trial court entered the following relevant findings:

6.     Regarding his claim that counsel was deficient for failing to contact 'Matthew's probation officer,' Applicant fails to meet his burden of showing which witnesses trial counsel should have sought out and interviewed, that this witnesses [sic] was available, and that his testimony would have benefited Applicant's defense.

*     *     *     *

12.    Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

13.    The totality of the representation afforded Applicant at trial was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

15

*Ex parte Porcher*, pp. 146–147 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner's allegations that counsel was deficient in failing to call this purported witness are conclusory and unsupported in the record. Petitioner presents no probative summary judgment evidence regarding the identity and proposed testimony of this witness, the availability of the witness, or that the testimony would have been material and beneficial to the defense. *See Day*, 566 F.3d at 538. He further fails to demonstrate that, but for counsel's failure to call this witness, there is a reasonable probability that the result of his trial would have been different. Petitioner establishes neither deficient performance nor prejudice under *Strickland*, and his conclusory allegations are insufficient to raise a genuine issue of material fact precluding summary judgment. *See Ross*, 694 F.2d at 1011.

The state courts denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment under this claim.

    E.    <u>Failure to object to a juror during trial</u>

Petitioner claims that, during trial, one of the jurors stated "he knew petitioner had been with someone whose name came up during trial." As supporting facts for this claim, petitioner states in his petition that, "This person was at time of trial serving time for aggravated robbery. Jury would be biased against petitioner. Due to the guilty [sic] by

16

association.  He should have been struck from [the] jury and not allowed to taint other

Jurors."  (Docket Entry No. 1, p. 8.)

The record shows that, during trial, juror David O'Connor sent a note to the court.

The photocopy of the note as it appears in the record is of poor quality and difficult to read.

(Docket Entry No. 6-10, p. 42.)  However, O'Connor appears to state in the note that,

"Yesterday I started thinking that I have seen the defendant [illegible].  Today, when the []

[] Bostic a track coach came [] I think that is where I have seen him ([] Meeks).  I have been

part of the track community in Houston for many years.  I'm not sure but wanted to make you

aware."  *Id*.

The trial judge then questioned O'Connor on the record outside the presence of the

jury, as follows:

> THE COURT:       Come on up.  You're the one that wrote the note.  What's
> your name?
>
> THE JUROR:       David O'Connor.
>
> THE COURT:       You might know the Defendant and might not; may have
> seen him before and may not.  Is that going to make any
> difference in your evaluation?
> THE JUROR:       I don't know.  I just didn't know if it wouldn't made a
> difference to you.
>
> THE COURT:       No.  Only if you –
>
> THE JUROR:       No.  Just wanted to make sure.
>
> THE COURT:       You can still follow your oath?
>
> THE JUROR:       Okay.  Yes.

17

THE COURT:      And I appreciate you letting us know.  Okay thank you.

(R.R., Vol. 6, p. 53.)  The juror returned to the jury without further incident.

In rejecting petitioner's claim of ineffective assistance, the trial court on collateral

review made the following relevant findings:

8.      [B]ecause Applicant fails to show that the trial court would have erred
        in overruling an objection to a juror, Applicant fails to show counsel
        was ineffective in this regard.

                              *    *    *    *

12.     Applicant fails to show that counsel's conduct fell below an objective
        standard of reasonableness and that, but for counsel's alleged deficient
        conduct, there is a reasonable probability that the result of the
        proceeding would have been different.

13.     The totality of the representation afforded Applicant at trial was
        sufficient to protect his right to reasonably effective assistance of
        counsel in the primary case.

*Ex parte Porcher*, pp. 146–147 (citations omitted).  The Texas Court of Criminal Appeals

relied on these findings in denying habeas relief.

In raising this issue, petitioner stated in his petition as follows:

At this time, a juror, David O' Conner [sic], states that he may know the
Defendant, prior to this date.  (R.R., Vol. 6, p. 53.)  This juror, who did know
[Bostic], and Bostic's name was mentioned in this trial, and Bostic was also
said during this trial to be a gang member, claims that he thinks he remembers
seeing me with Bostic.  This juror is still allowed to sit on the jury, and judge
applicant.  This juror knows Bostic, and Bostic is said in front of him to be a
gang member, and Bostic is currently serving time in prison for robb. [sic] or
agg. [sic] robbery, and was so during the time of Papplicnat's [sic] trial, and
this was made aware tot [sic] he [sic] jury.  If he claimed to have been [sic]
applicant with Bostic or even knows Bostic, which he does, he's going to

18

assosiate [sic] applicnat [sic] with Bostic and that makes him biased in his opinion of applicant.

(Docket Entry No. 1-4, p. 8.)

It is petitioner's belief that O'Connor was biased against him as a result of guilt by association with Bostic.  However, the record shows that O'Connor was not even sure if it actually was petitioner he saw at an earlier time with Bostic.  Moreover, under questioning by the trial court, O'Connor stated that he could still follow his oath as a juror.  Neither petitioner nor the record establishes that O'Connor was biased or prejudiced against petitioner, or that he in any way "tainted" the other jurors.  Petitioner fails to show that, had counsel objected to O'Connor's continued presence on the jury, the objection would have been granted; in the alternative, petitioner fails to show that it would have constituted error for the trial court to overrule such an objection.  Petitioner's conclusory allegations, unsupported by the record, establish neither deficient performance nor prejudice under *Strickland*.  *See Ross*, 694 F.2d at 1011.

The state courts denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment under this claim.

F.     Failure to object to evidence of petitioner's gang affiliation

Petitioner complains that trial counsel should have objected to testimony by FBI Agent Walthur of his gang affiliation with "The Family" and his gang nickname, "Ice."

19

Although the record shows that trial counsel raised some objections to this evidence at trial, he failed to object to similar evidence presented elsewhere. *See Porcher*, at *8–9.  On direct appeal, petitioner argued that the evidence was inadmissible hearsay; however, the state court of appeals rejected the argument as waived because trial counsel had not objected to other, similar testimony.  *Id*.

In rejecting petitioner's ineffective assistance claim, the trial court on collateral review made the following relevant findings:

9.   Because Applicant fails to show that the trial court would have erred in overruling an objection to testimony regarding Applicant's gang membership, Applicant fails to show counsel was ineffective in this regard.

10.  Because Applicant fails to show that the trial court would have erred in overruling an objection to testimony regarding Applicant's nickname, Applicant fails to show counsel was ineffective in this regard.

*     *     *     *

12.  Applicant fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

13.  The totality of the representation afforded Applicant at trial was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

*Ex parte Porcher*, pp. 146–147 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

20

Petitioner argues here, as he did on direct appeal, that the evidence of his gang affiliation and nickname constituted inadmissible hearsay to which counsel should have objected.  (Docket Entry No. 1, p. 9.)  He further claims that counsel was ineffective in not *consistently* objecting to the evidence as inadmissible hearsay. *Id*.  However, petitioner again fails to show that, had counsel objected to the testimony as inadmissible hearsay, the objection would have been granted; in the alternative, petitioner does not show that it would have constituted error for the trial court to overrule such an objection.   Petitioner's conclusory allegations, unsupported by the record, establish neither deficient performance nor prejudice under *Strickland*.  *See Ross*, 694 F.2d at 1011.

It is clear from the record that evidence regarding "The Family" or "The Fam" was material and relevant to the criminal offense and its proof.  First, the plan to recover the drug money from Merriweather was executed, in whole or in part, through members of the gang, including petitioner.  More significantly, it was threats and intimidation from members of the gang that, according to Mathews, initially kept Mathews from informing authorities that petitioner had been the shooter.  Thus, the record refutes petitioner's conclusory allegation that the State's sole purpose in introducing evidence regarding the gang and his nickname was to sully petitioner's name and credibility.  Petitioner fails to demonstrate that, but for trial counsel's failure to consistently object to evidence of his gang affiliation and nickname, there is a reasonable probability that the result of his trial would have been different.

The state courts denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this claim.

### *Ineffective Assistance of Appellate Counsel*

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  This Court reviews counsel's appellate performance under the *Strickland* standards.  *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998).  Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice.  That is, petitioner must show that, but for appellate counsel's deficient performance, the outcome of the appeal would have been different.  *See Strickland*, 466 U.S. at 687–88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998).  Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal.  *Evitts*, 469 U.S. at 394.  Nor will counsel be deficient for failing to press a frivolous point.  Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.  *Id*.  A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful.  *Strickland*, 466 U.S. at 690–91.

Petitioner claims that appellate counsel was ineffective in failing to challenge the sufficiency of the evidence to support the conviction.  He argues that the State relied on the

22

testimony of Mathews to show that a robbery or attempted robbery had taken place, which was not enough to obtain a valid conviction.  (Docket Entry No. 1, p. 8.)

In rejecting petitioner's claim of ineffective assistance of appellate counsel, the trial court on collateral review made the following relevant findings:

> 14.   Regarding Applicant's claims of ineffective assistance of appellate counsel, the court finds that Applicant fails to show that appellate counsel's conduct fell below an objective standard of reasonableness and that, but for appellate counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.
>
> 15.   The totality of the representation afforded Applicant on direct appeal was sufficient to protect his right to reasonably effective assistance of appellate counsel in the primary case.

*Ex parte Porcher*, pp. 147–148 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

In reviewing the sufficiency of the evidence, the federal standard for review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts."  *Id*.  Any contradictory testimony does not affect the validity of the guilty verdict.  *Id*.  The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence.  *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence set forth by the state appellate court in its opinion affirming the conviction is itself enough to allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge in a Texas appellate court. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  An independent review of the trial record reveals sufficient evidence under *Jackson* to sustain the jury's verdict.  Although petitioner argues that Mathews's testimony was inadequate under state law to establish a robbery or attempted robbery, he cites no applicable, controlling legal authority for this contention.  Consequently, petitioner does not show that, but for appellate counsel's failure to challenge the sufficiency of the evidence, there is a reasonable probability that the result of his appeal would have been different.

The state courts denied relief on this claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment under this claim.[2]

---

[2]The Court notes that, in his application for state habeas relief, petitioner raised one additional claim for ineffective assistance of trial counsel.  As "Ground Twelve" in his state application, petitioner claimed that trial counsel was "ineffective for failing to timely object to the venireperson's failure to complete the juror information card is [sic] a race-neutral justification for striking the venireperson."  *Ex parte Porcher*, p. 18.  By this argument, petitioner argued that counsel failed to raise a proper objection under *Batson v. Kentucky*, 476 U.S. 79 (1986).  Petitioner did not, however, carry this particular claim forward to the instant federal habeas petition.  (Docket Entry No. 1, pp. 6–9.)  Petitioner did file with this Court a duplicate copy of the memorandum of law he filed with his state application.  The memorandum addresses the *Batson* argument that was presented to the state court but not listed as a claim in this Court.  To

### *Prosecutorial Misconduct*

Petitioner claims that the State committed prosecutorial misconduct in soliciting perjured testimony and in withholding information that a witnesses had been prepared for trial.  Respondent argues that these claims were not properly raised in the state courts, are procedurally defaulted, and are now barred from consideration by this Court.

In rejecting petitioner's claims of prosecutorial misconduct, the trial court on collateral review made the following relevant findings:

> 16.  Applicant's claim that he was harmed by the State's alleged use of perjured testimony need not be considered since Applicant failed to raise this 'record claim' on direct appeal.

> 17.  Applicant's claim that he was harmed by the State's alleged failure to disclose that the prosecutor met with Constable Evans in preparation for trial need not be considered since Applicant failed to raise this 'record claim' on direct appeal.

*Ex parte Porcher*, p. 148 (citations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.  The trial court's findings followed well established state law.  *See Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989)

---

any extent that petitioner intended to raise Ground Twelve in the instant proceeding, the record shows that trial counsel raised a *Batson* objection to the State's actions, and that the trial court denied the objection after hearing argument from defense counsel and the State.  R.R., Vol. 2, pp. 127–131.  Further, the trial court denied state habeas relief on this issue.  *Ex parte Porcher*, p. 147.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent would be entitled to summary judgment under this claim.

(holding that state habeas petitions may not be used to litigate matters which should have been brought on direct appeal).

Because petitioner did not raise these claims on direct appeal, and the trial court on collateral review found that the issues should have been raised on direct appeal, the claims have been procedurally defaulted and are now barred from consideration by this Court. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). For this Court to reach the merits of these procedurally defaulted claims, petitioner must establish "good cause" and "prejudice" regarding the state court's failure to consider the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). Petitioner fails to argue, much less establish, good cause and prejudice. Accordingly, the issues are procedurally defaulted and will not be considered by the Court. Respondent is entitled to summary judgment under these issues.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 11) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on January 30, 2012.

Gray H. Miller
United States District Judge